## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Soeun KIM,

      *Petitioner*,

v.

Marcos D. CHARLES, in his official capacity
as Acting Field Office Director for U.S.
Immigration and Customs Enforcement,
William P. BARR, in his official capacity as
the Attorney General of the United States;
Enforcement and Removal Operations,
Boston Field Office; and the U.S.
DEPARTMENT OF HOMELAND
SECURITY,

      *Respondents*.

**VERIFIED PETITION AND
COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**


**ORAL ARGUMENT REQUESTED**

## INTRODUCTION

1. For the second time in his life, Petitioner Soeun Kim, a forty-one year old Cambodian

   refugee who is a devoted husband and father, has been in prolonged and unnecessary

   immigration detention. Mr. Kim has been in detention since March 20, 2019, when he

   voluntarily reported to a detention center in Maine, separating him from his then-

   pregnant U.S. citizen wife and U.S. citizen toddler child.

2. Immigration and Customs Enforcement (ICE) first detained Mr. Kim for approximately

   seven months in 2014 after he was ordered removed due to past criminal convictions.

   Since his release on an order of supervision in 2014, Mr. Kim has rebuilt a life with his

   U.S. citizen wife and has held a steady job. Mr. Kim has complied with his supervised

release. He has also been diagnosed with a debilitating disease that could, without proper medical treatment, cause ligaments in his spine to become inflamed and turn into bone, thus paralyzing him. He has three U.S. citizen children, including a three-month-old who has a disability and was born during ICE's second detention of Mr. Kim.

3. Mr. Kim's lengthy detention violates the All Writs Act, 28 U.S.C. § 1651; the Immigration and Nationality Act ("INA"); the Administrative Procedure Act ("APA"), 5 U.S.C § 701; Article I, Section 9, Clause 2 of the United States Constitution (Suspension Clause); and the Fourteenth Amendment of the United States Constitution.

4. ICE has failed to make an individualized determination of Mr. Kim's dangerousness or possibility as a flight risk, as required by the INA's implementing regulations after an initial 90-day detention period.

5. Mr. Kim is not a danger to the community nor is he a flight risk and should therefore be released. While he was in prison, Mr. Kim spent the majority of his time rehabilitating himself by completing more than 50 courses and devoting himself to Catholicism. Since his release from ICE detention in 2014, the center of his life has been his family. When he received notice of a redetention date in March 2019, Mr. Kim did not run. He continued to work and support his family and then voluntarily reported to ICE on the appropriate date. Mr. Kim also is not a flight risk as his serious medical diagnosis requires regular medical treatment and consistent medication in consultation with his physician. Mr. Kim's entire life is with his family in Maine and he seeks to remain in the community he has known for nearly his entire life.

6. Mr. Kim's deportation also is not reasonably foreseeable. As part of a broader mass detention campaign of Cambodian Americans, ICE has been detaining Cambodian

Americans approximately every four months since 2017. In the last two years, ICE has conducted six rounds of raids in the Cambodian community. Mr. Kim has been detained since the fifth round of raids in March 2019. Although ICE has deported other Cambodians, it did not remove Mr. Kim. Instead, ICE has been investigating an assault by a correction officer against Mr. Kim. ICE has informed him that a "typical" investigation can take a year and stated that he must remain in detention just in case the investigator wants to speak to him again. Despite Mr. Kim's inquiries, ICE has not confirmed whether it holds a valid travel document to allow for Mr. Kim's removal.

7.  Pursuant to this Court's inherent powers in habeas corpus proceedings, Mr. Kim respectfully requests this Court order his immediate release from custody. *See Jimenez v. Cronen*, 317 F. Supp. 3d 626, 657 (D. Mass. 2018) (granting habeas relief for petitioners who suffered from ICE's unlawful detention procedures); *see also Aguilar v. U.S. Immigration & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 10–11 (1st Cir. 2007) (explaining that REAL ID Act of 2005 "should not be read to preclude habeas review over challenges to detention"). Mr. Kim also requests that Respondents be enjoined from removing him from the Commonwealth of Massachusetts until Mr. Kim has an opportunity to exhaust his right to adjust his status through his U.S. citizen wife. *See, e.g., Jimenez v. Nielsen*, 334 F. Supp. 3d 370, 387 (D. Mass. 2018) (finding right to pursue provisional waiver process); *see also Compere v. Nielsen*, 358 F. Supp. 3d 170, 181 (D. N.H. 2019), *appeal dismissed,* No. 19-1303 (1st Cir. May 30, 2019) (finding that petitioner had right to stay of removal as he would be unable to litigate his motion to reopen if removed).

**JURISDICTION**

8.  This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 2241;

    28 U.S.C. § 1331; the Suspension Clause; the All Writs Act, 28 U.S.C. § 1651; the APA,

    5 U.S.C § 701; and for declaratory and injunctive relief pursuant to the Declaratory

    Judgment Act, 28 U.S.C. § 2201. Mr. Kim's current detention constitutes a "severe

    restraint" on his individual liberty such that Mr. Kim is "in custody" of Respondents in

    violation of the laws of the United States. *Hensley v. Municipal Court*, 411 U.S. 345, 351

    (1973); 28 U.S.C. § 2241. While the courts of appeals have jurisdiction to review

    removal orders directly through petitions for review, see 8 U.S.C. § 1252(a)(1), (b),

    federal district courts have jurisdiction under 28 U.S.C. § 2241(d) to hear habeas claims

    by noncitizens challenging the lawfulness or constitutionality of ICE conduct. *See*

    *Demore v. Kim*, 538 U.S. 510, 516–517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687

    (2001). Although the Real ID Act divested district courts of jurisdiction to hear petitions

    for habeas corpus relief challenging final orders of removal, district courts retained

    jurisdiction over detention challenges. *See Hernandez v. Gonzales*, 424 F.3d 42 (1st Cir.

    2005).

9.  Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S.484, 493-500

    (1973), venue lies in the United States District Court for the District of Massachusetts,

    the judicial district in which Mr. Kim is being detained. Venue in this Court is proper

    because Mr. Kim is being detained at the Franklin County House of Correction in the

    custody of the Boston ICE Field Office in Greenfield, Massachusetts, which is within the

    District; because a substantial part of the events or omissions giving rise to the claim

occurred in this District; and because Respondents' decision to detain Mr. Kim occurred in this District.

## EXHAUSTION OF REMEDIES

10. No exhaustion requirement applies to the constitutional claims raised in this Petition, because no administrative agency exists to entertain Mr. Kim's constitutional challenges. *See Aguilar*, 510 F.3d at 12 (finding that exhaustion not necessary either for claims collateral to removal proceedings or where adequate relief not feasible through administrative process); *see also Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463–64 (D. Mass. 2010) (holding that BIA, as court of limited jurisdiction, lacks authority to adjudicate constitutional issues (internal citations omitted)).

## PARTIES

11. Petitioner Soeun Kim, a devoted husband to his U.S. citizen wife and a father of three U.S. citizen children, voluntarily reported to ICE on March 20, 2019 and has been redetained for more than 230 days since then. He remains detained at the Franklin County House of Correction in Massachusetts, separated from his family without any meaningful opportunity to challenge Respondents' decisions to infringe on his liberty.

12. Respondent William P. Barr is named in his capacity as the individual currently named as the Attorney General of the United States. In this capacity, he is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review. Respondent Barr routinely transacts business in the Commonwealth, is legally responsible for administering Mr. Kim's removal proceedings and the standards used in those proceedings, and as such is a legal custodian of Mr. Kim.

Respondent Barr's address is Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530.

13. Respondent Marcos D. Charles is the Acting Field Office Director for the Boston Field Office of the U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations. He is the local ICE official who has immediate authority over the detention of Mr. Kim. Respondent Charles' address is Acting Field Office Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, 1000 District Avenue, Burlington, MA, 01803.

14. Respondent Department of Homeland Security ("DHS") is the federal agency responsible for enforcing Mr. Kim's continued detention pending his removal proceedings. DHS's address is U.S. Department of Homeland Security, 245 Murray Lane, SW, Washington, DC 20528.

## STATEMENT OF FACTS

15. Petitioner Soeun Kim—who has a U.S. citizen wife and three U.S. citizen children, including a three month old who was born while he has been in detention, brings this Verified Petition for Habeas Corpus and Complaint for Declaratory and Injunctive Relief.

16. Mr. Kim was born in a refugee camp in Thailand in 1978 after his parents fled the genocide in Cambodia. One sister passed away in the refugee camp, but he has an older U.S. citizen sister and two younger brothers. He has never stepped foot in Cambodia.

17. On September 26, 1984, Mr. Kim, his parents, and siblings arrived in the United States as refugees. Mr. Kim's first memory is flying on the plane to the United States.

18. On December 24, 1985, Mr. Kim adjusted to lawful permanent resident status.

19. When the family first arrived in the United States, Mr. Kim and his siblings went to live with their uncle in New Hampshire. Eventually, after their parents found employment as production workers in Maine, Mr. Kim and his siblings joined them.

20. Mr. Kim's grandparents, who also fled the genocide in Cambodia and came to the United States a few years after Mr. Kim, lived with Mr. Kim and his parents.

21. Mr. Kim was especially close with his grandfather. Mr. Kim watched old movies and took long road trips with his grandfather. He still fondly remembers the Cambodian meals his grandfather cooked for him.

22. When Mr. Kim was about 16 years old, his grandfather passed away. His grandfather's death was a downward turning point for Mr. Kim. He had been a good student and played many sports. But not long after his grandfather's death, Mr. Kim fell into a major depression and left school to work.

23. Mr. Kim's first U.S. citizen daughter was born in 1998.

24. In 1998, Mr. Kim pled guilty to class D assault in Maine. He was sentenced to 364 days of imprisonment and ended up serving seven months in Cumberland County Jail with one-year suspended probation.

25. In 2000, Mr. Kim was convicted of robbery and burglary in Maine. Mr. Kim was in prison for approximately 15 years.

26. Mr. Kim was only about 22 years old when he entered prison and has suffered in an institutionalized setting. He has experienced mental health issues as well as physical and sexual violence inflicted by other incarcerated people. Mr. Kim still experiences anxiety, paranoia, and nightmares from solitary confinement.

27. Yet Mr. Kim also diligently pursued all the educational opportunities that were available to him while incarcerated. Mr. Kim finished his high school education. He took more than 50 courses, including classes in computers, mechanics, construction, parenting, and fatherhood. He also participated in the 12-step program of Alcoholics Anonymous.

28. In addition, Mr. Kim furthered his practice of and commitment to Catholicism. In 2010, while still incarcerated, Mr. Kim was baptized by Cardinal Sean O'Malley.

29. On May 19, 2013, Mr. Kim married Theresa St. Pierre Kim, a U.S. citizen whom he has known since the two were in high school in Maine.

30. While incarcerated, on June 26, 2014, Mr. Kim was ordered removed.

31. ICE had detained Mr. Kim for approximately seven months before he was released on an order of supervision in approximately November 2014.

32. After leaving ICE detention on supervised release, Mr. Kim has not been convicted of additional crimes. In addition, he has diligently and regularly checked in with ICE as required.

33. Since approximately 2014 until his redetention by ICE, Mr. Kim held a full-time job as a machine technician at Volk Packaging. He also worked part time for Event Safe Security.

34. In 2015, after experiencing severe back pain and neck and chest stiffness, Mr. Kim was diagnosed with ankylosing spondylitis, a disease that causes ligaments in the spine to become inflamed and turn into bone without careful medical treatment. Since then, he has taken medication to prevent disability from this condition and routinely sought medical care from doctors specialized in treating this disease.

35. Mr. Kim and his wife share two U.S. citizen children: a toddler daughter and an infant son, who was born during Mr. Kim's redetention. Until Mr. Kim's redetention, he lived with his family in Saco, Maine.

36. Mr. Kim's rehabilitation has been successful: he has pursued and obtained educational opportunities, deepened his religious commitment, started his own family, and held a steady job prior to his current redetention. He deeply regrets the mistakes of his youth and has dedicated himself to his family.

37. In March 2019, Mr. Kim received a notice that he must report to the local ICE office on March 20, 2019 for redetention to execute the final order of removal.

38. On March 20, 2019, Mr. Kim voluntarily reported to the ICE Field Office in Biddeford, Maine, knowing that he would be redetained.

39. He has remained detained since March 2019.

40. During his prolonged redetention, ICE has subjected Mr. Kim to repeated relocations and exacerbated his serious medical condition.

41. Shortly after redetaining Mr. Kim, ICE transferred him to a detention center in Texas.

42. After an interview with the Cambodian Consulate in Texas, ICE transferred Mr. Kim to Strafford County House of Corrections in New Hampshire.

43. On May 21, 2019, Mr. Kim was entitled to a 90-day review of custody, but ICE denied Mr. Kim his release.

44. Shortly after, in June 2019, at Strafford County House of Corrections, Mr. Kim was the victim of abuse by a correctional officer, who grabbed Mr. Kim's wrist by force, pushed his head down and aggressively cuffed his wrist. The officer's abuse left Mr. Kim with a

visible scar on his wrist and swelling that lasted for a prolonged period. Mr. Kim has had difficulty lifting his shoulder following this incident of abuse.

45. After reviewing video footage of the correction officer's attack, ICE officer Lloyd Gifford wrote an incident report, corroborated by detainees and inmates, and sent the report to the Burlington ICE office, which then reported to ICE headquarters in Washington, DC.

46. On June 28, 2019, ICE informed Mr. Kim he must remain detained in the United States, rather than board a flight to Cambodia, due to a pending investigation concerning the correction officer's attack.

47. On July 9, 2019, ICE sent Mr. Kim to Suffolk County House of Corrections ("South Bay Detention Center") in Massachusetts.

48. On July 10, 2019, Mr. Kim sent his first request to ICE while at South Bay Detention Center asking about the status of his situation. The response, dated July 10, 2019, stated: "You are not going to be released/removed at this time while pending the investigation."

49. On July 19, 2019, Mr. Kim met with investigators, but to date is not aware of the results of the investigation. He has been told that the investigation could pend for months and that a travel document would not be issued during that period.

50. Mr. Kim sent additional requests asking for more information on July 14, July 15, July 19, July 28, and August 11. He received similar responses from ICE that he would continue to be detained and that the investigation was still pending.

51. On August 15, 2019, ICE issued a second[1] 180-day review "Decision to Continue Detention," determining that Mr. Kim would "not be released from custody at this time." Mr. Kim had not received notice of this review.

52. ICE has not interviewed Mr. Kim despite denying him release in the 180-day review.

53. Mr. Kim continued to ask for updates and any news of a travel document in additional written requests to ICE on August 16, 20, and 28. Similar to previous responses, ICE did not provide answers about a travel document.

54. On October 11, 2019, ICE transferred Mr. Kim from South Bay Detention Center to Franklin County House of Correction.

55. To date, Mr. Kim has not received confirmation that ICE will issue a travel document. In addition, the investigation of the correction officer's attack on him is still pending.

56. Since March 20, 2019, Mr. Kim has been redetained for nearly eight months, even though he does not pose any danger to his community, nor is he a flight risk.

57. Mr. Kim's entire life is in Maine and the United States. His serious medical condition, which could leave him disabled if untreated, means that he must be in consistent contact with his doctor. His primary responsibility is to his wife Theresa and their two young children. His U.S. citizen wife needs additional help with the children as their second child was born with a club foot, recently had surgery, and will be in a brace until he is at least 3 years old with bimonthly doctor visits for the next several years. Mr. Kim is clearly an asset to the community as well as a loving husband and father.

---

[1] Mr. Kim already had a first 180-day custody review when ICE had first detained him for seven months in 2014.

## LEGAL FRAMEWORK

58. Mr. Kim's arbitrary and prolonged detention constitutes a "severe restraint" on his individual liberty such that Mr. Kim is "in custody" of Respondents "in violation of the . . . laws of the United States." *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973); 28 U.S.C. § 2241.

59. It is well established that "all persons within the territory of the United States are entitled to the protection of the Constitution." *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886). All persons, including non-citizens, are entitled to due process of law under the Fifth Amendment. *Demore*, 538 U.S. at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *see Zadvydas*, 533 U.S. at 693. Due Process provides that "[n]o person shall be . . . deprived of life, liberty or property, without due process of law." U.S. Const. Amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690.

60. Due process requires "adequate procedural protections" to ensure that the government's asserted justification for its conduct infringing on protected interests "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id*. at 690 (internal quotation marks omitted). In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention—to mitigate the risks of danger to the community and to prevent flight. *See id.*; *Demore*, 538 U.S. at 528.

61. Other than as punishment for a crime, due process permits the government to take away liberty only "in certain special and narrow nonpunitive circumstances . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding

physical restraint." *Zadvydas*, 533 U.S. at 690 (quotations omitted). Such special justification exists only where a restraint on liberty bears a "reasonable relation" to permissible purposes. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *see also Foucha v. Louisiana*, 504 U.S. 71, 79 (1992); *Zadvydas*, 533 U.S. at 690. In the immigration context, those purposes are limited to "ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (quotations omitted).

62. Those substantive limitations on detention are closely intertwined with procedural due process protections. *See Foucha*, 504 U.S. at 78-80. Noncitizens have a right to adequate procedures to determine whether their detention and intrusion on protected rights in fact serves the limited purposes of ensuring appearances or protecting the community. *See id.* at 79; *Zadvydas*, 533 U.S. at 692; *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 949 (9th Cir. 2008). Where laws, regulations, or government conducts fail to provide such protective processes, a habeas court must assess whether the noncitizen's civil immigration detention is reasonably related to the purposes of ensuring his appearance or protecting the community. *See Zadvydas*, 533 U.S. at 699.

63. Interpreted in light of the Constitution, the INA and its implementing regulations do not permit abrupt detention while an individual is engaged in the process of attempting to regularize his immigration status and without any determination that he poses a danger or flight risk. The INA makes detention mandatory only during a "removal period"—a 90-day period that commences when order of removal becomes final. *See* 8 U.S.C. § 1231(a)(1). Here that 90-day period ended approximately 5 years ago when ICE detained Mr. Kim for seven months in 2014. After the 90-day period, detention is permissible only

in certain circumstances following both notice to the noncitizen and after an individualized determination of dangerousness and flight risk. *See* 8 U.S.C. § 1231(a)(6); 8 C.F.R. § 241.4(d), (f), (h) & (k) (regulations promulgated following *Zadvydas*).

64. Further, even if ICE were to ignore Mr. Kim's prior period of detention in 2014, the INA and its implementing regulations requires notice and custody reviews after 90-day and 180-day periods. 8 C.F.R. § 241.4(k)(2)(ii). If individuals are not released after the 180-day review, then regulations require a process for interviewing that individual such that a meaningful defense and opportunity to be heard is contemplated. 8 C.F.R. § 241.4(i)(3)(i)-(ii). Mr. Kim did not receive notice prior to the 180-day review nor was he interviewed after ICE determined he would not be released.

65. The INA does not uniformly condemn individuals who live in the United States under final orders of removal stemming from criminal convictions to permanent separation from their families and communities. Instead, it allows these individuals, if otherwise eligible, to apply for potential relief, such as a petition for adjustment of status through a U.S. citizen spouse along with a 212(h) waiver, the precise relief for which Mr. Kim is eligible to apply.

66. Due process protects a noncitizen's liberty interest in the adjudication of applications for relief and benefits made available under immigration law. *See Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (recognizing protected interests in the "right to seek relief" even when there is no "right to the relief itself"). Mr. Kim has a protected due process interest in his ability to apply for provisional waivers in seeking legal permanent resident status.

67. Without providing Mr. Kim with any meaningful opportunity to be heard, considering his potential relief, or making any individualized determination of whether he is dangerous or a flight risk, Respondents, now detain Mr. Kim, separating him from his family.

68. The APA forbids agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When reviewing agency action, a court "must assess . . . whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment" and must "examin[e] the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

69. Moreover, the order of supervision (OSUP) issued to Mr. Kim in approximately 2014 created legitimate liberty and property interests that cannot be infringed without sufficient procedural protections. Mr. Kim had a liberty interest in his freedom from physical confinement, which his OSUP helped to secure. *See Zadvydas*, 533 U.S. at 690.

70. Mr. Kim also has a property interest in his OSUP. Property interests "are created and their dimensions are defined by existing rules or understandings that . . . secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

71. When Mr. Kim was detained on March 20, 2019, without any meaningful or timely opportunity to be heard, Respondents infringed upon his protected liberty and property interests. This infringement continues with each additional day that Mr. Kim remains detained without any due process protections.

72. Mr. Kim has complied with the conditions of his release, is not a risk or danger to the community—in fact his presence significantly benefits his family, his workplace and his

community—and his redetention of more than seven months now violates his rights protected by the Fifth Amendment. No statute authorized Mr. Kim's detention without cause, notice, or any opportunity to be heard. Rather, the only statutory provision that applied to him is the statute that provides that noncitizens "shall" be subject to an order of "supervision" – not subject to "detention." 8 U.S.C. 1231(a)(6).

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

## PETITIONER'S DETENTION VIOLATES DUE PROCESS UNDER THE U.S. CONSTITUTION

73. Mr. Kim's redetention by ICE violates his rights under the Due Process Clause of the Fifth Amendment of the United States Constitution.

74. Any efforts by Respondents to remove Mr. Kim, without allowing him to avail himself of the procedures created by the INA and its regulations, would violate due process.

75. Other than as punishment for a crime, due process permits the government to take away liberty only "in certain special and narrow nonpunitive circumstances . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (quotations omitted).

76. Such special justification exists only where a restraint on liberty bears a "reasonable relation" to permissible purposes. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *see also Foucha v. Louisiana*, 504 U.S. 71, 79 (1992); *Zadvydas*, 533 U.S. at 690.

77. In the immigration context, those purposes are limited to "ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (quotations omitted).

78. Respondents' detention of Mr. Kim without any reasonable relationship to permissible purpose violates due process.

## SECOND CAUSE OF ACTION

## REDETENTION OF PETITIONER WITHOUT AN OPPORTUNITY TO BE HEARD VIOLATES DUE PROCESS UNDER THE U.S. CONSTITUTION

79. Mr. Kim re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

80. Due process also protects a noncitizen's liberty interest in having a meaningful opportunity to be heard as required under immigration laws and implementing regulations. Mr. Kim has protected due process interests both in receiving notice in advance of the 180-day custody review and, if denied release, in being afforded an interview and in being accompanied by a representative of his choice.

81. When Mr. Kim was redetained on March 20, 2019, without an opportunity to be heard, Respondents infringed upon Mr. Kim's protected liberty and property interests.

82. When the government fails to comply with its own federal regulations, as Respondents did when they revoked Mr. Kim's release in violation of its own procedures, such action violates the law. *See e.g.*, *Rombot v. Souza*, No. 17-11577-PBS, 2017 U.S. Dist. LEXIS 185244, at *12 (D. Mass. Nov. 8, 2017) (granting habeas petition where ICE conducted custody status review improperly in violation of 8 C.F.R. § 241.4).

83. Mr. Kim was detained on March 20, 2019 without an opportunity to be heard. To the extent Respondents have revoked Mr. Kim's OSUP, Respondents have deprived Kim of due process of law.

84. Respondents have infringed upon Mr. Kim's protected liberty and property interests by denying him a meaningful opportunity to be heard, conduct which violates his constitutional rights.

### THIRD CAUSE OF ACTION
### PETITIONER'S REMOVAL VIOLATES THE APA

85. Mr. Kim re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

86. Detention by Respondents and efforts to remove Mr. Kim under the facts alleged here, including the lack of process provided as Mr. Kim has attempted to lawfully adjust his status through the family petition process created under the INA, are and would be arbitrary and capricious under the APA.

87. Respondents' actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "in excess of statutory jurisdiction, authority or limitations, or short of statutory right" and therefore violate the APA. 5 U.S.C. §706(2)(C).

### FOURTH CAUSE OF ACTION
### PETITIONER'S DETENTION BEARS NO RELATIONSHIP TO A VALID GOVERNMENTAL INTEREST AND VIOLATES THE INA AND REGULATIONS

88. Mr. Kim re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

89. To comport with due process, detention must bear a reasonable relationship to its two regulatory purposes—to ensure the appearance of noncitizens at future hearings and to prevent danger to the community pending the completion of removal. *Zadvydas*, 533 U.S. at 690–691 (2001). Federal law creates a process for determining whether individuals,

who have been ordered removed, such as Mr. Kim, should be detained while the government attempts to effectuate their removal. 8 U.S.C. § 1231(a)(2) requires that a noncitizen ordered removed from the United States be detained during a specified 90-day removal period – a period that, in Mr. Kim's case, started on the date his order of removal became final in 2014. *See* 8 U.S.C. § 1231(a)(1)(B)(i).

90. ICE must give an individual, such as Mr. Kim, notice and an opportunity to be heard in order to detain that individual following the expiration of the 90-day removal period. *See* 8 C.F.R. § 241.4.

91. 8 C.F.R § 241.4 delegates to ICE the authority to detain noncitizens beyond the initial 90-day removal period. It establishes standards and procedures ICE must follow to do so. The regulation provides that ICE will periodically review a noncitizen's records and consider whether to continue detention or release the noncitizen. *See* 8 C.F.R. § 241.4 (d), (h), (i) & (k). ICE must conduct the initial review "prior to the expiration of the removal period," *id.* § 241.4(h)(1); § 241.4(k)(1)(i), or "as soon as possible thereafter," *id.* § 241.4(k)(2)(iv), unless it makes written findings that the "detainee's prompt removal is practicable and proper," or that there is other "good cause" for postponing the review. *Id.* § 241.4(k)(3).

92. The INA also contemplates that if an individual is not immediately removed, he will be detained during the statutory removal period, stating that "during the removal period, the [Secretary] shall detain the [noncitizen]." § 241(a)(2). But after that 90-day period, the INA provides that "[i]f the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the [Secretary]." *Id.* § 241(a)(3). Mr. Kim's removal order

became final in 2014, and his continued detention, well beyond the statutorily defined 90-day removal period, has no legal basis.

93. The 90-day removal period for Mr. Kim clearly elapsed long ago. Mr. Kim's detention has not been the subject of any procedurally-adequate review to date.

94. Mr. Kim's continued detention is unjustified. As detailed above, he is neither dangerous nor a flight risk. He seeks release to a community that would openheartedly welcome his return, and a family that has found his absence increasingly challenging. Mr. Kim has complied with the terms of his OSUP. Moreover, Mr. Kim has fully cooperated with efforts by Respondents to detain and deport him, notably by voluntarily appearing at Biddeford, Maine's ICE Field Office for redetention on March 20, 2019 where, without explanation or an opportunity to challenge Respondents' decision, Mr. Kim was redetained.

95. Because Mr. Kim has the right to pursue the process to adjust his status and apply for a 212(h) waiver through his U.S. spouse to ensure family unity, and because Respondents previously released Mr. Kim on an OSUP that he has complied with, his detention does not bear any reasonable relationship to any legitimate purpose.

96. The redetention of Mr. Kim and continued detention is arbitrary and violates due process, the INA, and applicable regulations.

**FIFTH CAUSE OF ACTION**

**REDETENTION OF PETITIONER WITHOUT ANY PROCESS VIOLATES THE U.S. CONSTITUTION**

97. Mr. Kim re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

98. The OSUP issued to Mr. Kim created legitimate liberty and property interests.

99. First, Mr. Kim had a liberty interest in his freedom from physical confinement, which his order of supervision helped to secure. *See Zadvydas*, 533 U.S. at 690. Mr. Kim also has a property interest in his order of supervision and stay.

100.     When Mr. Kim was redetained on March 20, 2019, without an opportunity to be heard, Respondents infringed upon Mr. Kim's protected liberty and property interests.

101.     To the extent Respondents have revoked Mr. Kim's OSUP, Respondents have deprived Kim of due process of law and infringed upon Mr. Kim's protected liberty and property interests by denying him a meaningful opportunity to be heard prior to infringing on his liberty interests, conduct which violates his constitutional rights.

## SIXTH CAUSE OF ACTION
## PETITIONER'S REMOVAL VIOLATES THE SUSPENSION CLAUSE

102.     Mr. Kim re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

103.     Respondents' removal of Mr. Kim without any opportunity for meaningful judicial review of the unlawfulness of that removal would violate the Suspension Clause.

## REQUEST FOR ORAL ARGUMENT

104.     Mr. Kim respectfully requests oral argument on this Petition.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this matter;

2. Enjoin Respondents from moving Petitioner from the District of Massachusetts while habeas proceedings are pending;

3. Ordering Petitioner's immediate release from immigration detention pending final resolution of this habeas proceeding;

4. In the alternative, issue an order requiring Petitioner's release within 10 days unless Respondents schedule a hearing before a neutral immigration judge to provide Mr. Kim a constitutionally adequate process to challenge his detention;

5. Issue a declaration that Petitioner's ongoing detention violates the Due Process Clause, the INA, and the APA;

6. Grant such further relief as the Court deems just and proper.

Dated: November 13, 2019
Boston, MA

Respectfully submitted,

/s/ Bethany Y. Li_____
Bethany Y. Li, BBO # 673383
Yun Tang, Law Graduate
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
(617) 603-1532
BLi@gbls.org

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys. I have discussed with the Petitioner's legal team the events described in this Petition. On the basis of those discussions, on information and belief, I hereby verify that the factual statements made in the attached Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief and Request for Immediate Release are true and correct to the best of my knowledge.


Dated: November 13, 2019
Boston, Massachusetts


        /s/ Bethany Y. Li_____
        Bethany Y. Li