# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOEUN KIM,<br><br>               Petitioner,<br><br>v.<br><br>CHRISTOPHER J. DONELAN,[1]<br>*Franklin County Sheriff*,<br><br>               Respondent. | Civil Action No. 19-12342-ADB |

## RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS AND MOTION TO DISMISS

Respondent Christopher J. Donelan, Franklin County Sheriff ("Respondent"), by and through his attorney, Andrew E. Lelling, United States Attorney for the District of Massachusetts, respectfully moves this Court to dismiss Petitioner Soeun Kim's ("Kim") Petition for Writ of Habeas Corpus. Kim's detention is lawful because there is a significant likelihood that Kim will be removed in the reasonably foreseeable future—specifically, likely during the week of January 5, 2020, as U.S. Immigration and Customs Enforcement ("ICE") is in possession of a travel document to effectuate his removal and is currently awaiting confirmation of the travel itinerary. Moreover, this Court lacks jurisdiction over Kim's request to stay his removal, and his detention is authorized by law, not in violation of his right to due process, and warranted by the facts. Accordingly, the Court should dismiss the Petition. Fed. R. Civ. P. 12(b)(1), (b)(6).

---

[1] Pursuant to this Court's Order of November 21, 2019, Christopher J. Donelan is the sole respondent in this case. *See* Order, ECF No. 4.

## I. BACKGROUND

Kim is a citizen and national of Cambodia. (Declaration of Assistant Field Office Director Immaculata Guarna-Armstrong ("Guarna-Armstrong Decl."), Exhibit 1 ¶ 6.) He arrived in the United States as a minor in 1984 and adjusted status to that of a lawful permanent resident in 1985. (Pet. ¶¶ 17, 18; Guarna-Armstrong Decl. ¶ 6.) In 2000, Kim was convicted of robbery and burglary in Superior Court, Cumberland County, Maine, and was sentenced to 19 years of imprisonment. (Guarna-Armstrong Decl. ¶ 7.) In 2003, Kim was convicted of aggravated assault in Superior Court, Rockland County, Maine, stemming from an attack on a corrections officer while he was incarcerated. (*Id.* ¶ 8.) He was sentenced to two years and six months of imprisonment. (*Id.*)

On April 21, 2014, ICE detained Kim upon his release from state custody. (*Id.* ¶ 9.) ICE served Kim with a Notice to Appear on April 21, 2014, and instituted removal proceedings based on his criminal record, which rendered him removable from the United States. (*Id.*) On June 24, 2014, an immigration judge denied Kim's claims for relief and ordered him removed from the United States. (*Id.* ¶ 10.) Kim did not perfect an appeal of this order. (*Id.*)

On November 18, 2014, ICE released Kim from custody pursuant to an Order of Supervision under 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5. (*Id.* ¶ 11.) The Order of Supervision required Kim to assist ICE in obtaining necessary travel documents. (*Id.*)

The Cambodian government requires an in-person interview in order to verify citizenship prior to issuing a travel document. (*Id.* ¶ 12.) ICE scheduled Kim for an interview with the Cambodian government for March 27, 2019 in Conroe, Texas. (*Id.*) On March 5, 2019, ICE provided advance notification to Kim of its intention to revoke his Order of Supervision by mailing him a notice requiring him to report to his local ICE office for detention and execution of his final order of removal. (Pet. ¶ 37); (Guarna-Armstrong Decl. ¶ 12.) To facilitate the interview with the

Cambodian government, ICE revoked Kim's Order of Supervision and took him into custody on March 20, 2019. (Guarna-Armstrong Decl. ¶ 12.)

As required by 8 C.F.R. § 241.4(l), on March 20, 2019, ICE provided Kim with a Notice of Revocation of Release, which set forth the reasons for the revocation of his release. (*Id.* ¶ 13.) ICE also conducted an informal interview with Kim on March 20, 2019 to inform him of the reasons for the revocation. (*Id.*) ICE also provided Kim with notice that it would be conducting a custody review to determine whether he should remain in detention pending removal or released on an Order of Supervision. (*Id.*)

On May 14, 2019, ICE learned from ICE's Headquarters and Removal and International Operations ("HQ-RIO") unit that the Cambodian government had issued a travel document for Kim. (*Id.* ¶ 14.) On May 21, 2019, HQ-RIO issued a Decision to Continue Detention letter after conducting a custody review. (*Id.* ¶ 15.) HQ-RIO noted that ICE had obtained a travel document for Kim's removal and also noted Kim's criminal record. (*Id.*)

On May 21, 2019, ICE scheduled Kim for removal via a charter flight, which was to depart the United States on July 2, 2019. (*Id.* ¶ 16.) On June 24, 2019, ICE transferred Kim to Alexandria, Louisiana to stage him for removal from the United States. (*Id.* ¶ 17.) However, ICE removed Kim from the scheduled charter flight to ensure he could participate in the investigation of a claim he made that he was assaulted by correctional staff in June 2019. (*Id.* ¶ 18.) On August 15, 2019, HQ-RIO issued a second Decision to Continue Detention letter after conducting a custody review. (*Id.* ¶ 19.) HQ-RIO again noted that ICE had obtained a travel document for his removal and also noted Kim's criminal record. (*Id.*)

On November 4, 2019, ICE determined that it could proceed with removal based on the status of the assault investigation, and on November 7, 2019, ICE requested that the Cambodian

3

government re-issue Kim's travel document, as it had expired. (*Id.* ¶¶ 20, 21.) On November 14, 2019, the Government of Cambodia agreed to renew Kim's expired travel document. (*Id.* ¶ 21.) On November 14, 2019, HQ-RIO issued Kim a Decision to Continue Detention letter after conducting a custody review. (*Id.* ¶ 22.) HQ-RIO noted that ICE expected to receive a travel document for his removal and also noted Kim's criminal record. (*Id.*)

On December 4, 2019, ICE obtained a travel document for Kim. (*Id.* ¶ 23.) ICE has tentatively scheduled Kim for removal from the United States during the week of January 5, 2020, and is awaiting confirmation of the itinerary with its travel service provider. (*Id.* ¶¶ 24, 25.)

As of December 12, 2019, ICE has no information to indicate that Kim has filed a motion to reopen with the Boston immigration court in an effort to reopen his removal proceedings and seek relief from removal. (*Id.* ¶ 26.) ICE also has no information to indicate that Kim's United States citizen spouse has filed an I-130, Petition for Alien Relative on his behalf. (*Id.*) ICE also has not received an I-246, Application for a Stay of Removal from Kim. (*Id.*)

On November 13, 2019, Kim filed this Petition, in which he challenges his detention, seeks immediate release and requests a stay of his removal.

## II. ARGUMENT

The law requires ICE to remove individuals who are subject to valid and final removal orders. *See* 8 U.S.C. § 1231(a)(1)(A). It is undisputed that Kim is subject to a final order of removal. Accordingly, by asking this Court to order ICE to release him from custody and enjoin his removal from the United States pending his not yet started and speculative future pursuit of adjustment of status, Kim challenges the execution of his removal order. As set out below, the Court lacks subject matter jurisdiction to hear this request. Furthermore, Kim's detention-related claims fail as well: the government of Cambodia has issued travel documents and ICE anticipates

4

removing Kim the week of January 5, 2020, making Kim's removal significantly likely in the reasonably foreseeable future. Finally, the alleged regulatory violations do not mandate the extraordinary remedy of release.

### A. This Court Lacks Jurisdiction Over Kim's Challenge to His Removal Order.

Kim is currently detained pending execution of his final order of removal pursuant to 8 U.S.C. § 1231. The law is clear that this Court lacks jurisdiction to hear Kim's request to stay his removal. 8 U.S.C. § 1252.

First, pursuant to the provisions of 8 U.S.C. § 1252(g), "no court shall have jurisdiction to review any cause or claim . . . arising from the decision or action of the Attorney General to . . . ***execute removal orders*** against any alien . . . ." *Id.*[2] (emphasis added). *See generally Reno v. American-Arab Anti-Discrimination Comm. et al.*, 525 U.S. 471, 483 (1999) ("[t]here was good reason for Congress to focus special attention on, and make special provision for, judicial review of the Attorney General's discrete acts of 'commenc[ing] proceedings, adjudicat[ing], [and] execut[ing] removal orders . . . . [Because] [a]t each stage the Executive has discretion to abandon the endeavor . . . . Section 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the basis for separate rounds of judicial intervention outside the streamlined process that Congress has designed.")

Although he has attempted to frame his Petition as a due process challenge, Kim explicitly requests that the Court stay his removal. (*See, e.g.*, Pet. ¶ 7 ("Mr. Kim also requests that Respondents be enjoined from removing him from the Commonwealth of Massachusetts until Mr.

---

[2] Amended by Section 106(a)(3) of the REAL ID Act.

Kim has an opportunity to exhaust his right to adjust his status through his U.S. citizen wife.").) This Court lacks jurisdiction to grant Kim the relief he seeks. *See, e.g., Julce v. Smith*, Civil Action No. 18-10163-FDS, 2018 WL 1083734 at *4 (D. Mass. Feb. 27, 2018) (section 1252 deprives the district court of jurisdiction to stay petitioner's final removal order); *Ishak v. Gonzales*, 422 F.3d 22, 27-28 (1st Cir. 2005) ("[T]he REAL ID Act [ ], in the plainest of language, deprives the district courts of jurisdiction in removal cases.").

This is because Congress, in the REAL ID Act of 2005, prescribed only a single path for the judicial review of issues arising in removal proceedings: "a petition for review filed with an appropriate *court of appeals*." *See* 8 U.S.C. § 1252(a)(5) (emphasis added). Under 8 U.S.C. § 1252(b)(9), judicial review of these questions by individuals within the District of Massachusetts is available only by challenging a final order of removal in the First Circuit. Taken together, sections 1252(a)(5) and (b)(9) mean that any issue – whether legal or factual – arising from any removal-related activity can be reviewed only by the immigration courts or the courts of appeal. *See Julce*, 2018 WL 1083734 at *3 (citing *Ishak*, 422 F.3d at 27-28); *see also Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) ("Congress' clear intent [was] to have all challenges to removal orders heard in a single forum (the courts of appeals)[.]") (citing H.R. Conf. Rep. No. 109-72, at 174 (2005), U.S. Code Cong. & Admin. News 2005 at 240, 299)).

The Suspension Clause of the Constitution is satisfied because Kim has had an opportunity to pursue the relief he now seeks, adjustment of status, since 2014, and could have pursued that relief before the immigration court in the first instance or through a later filed motion to reopen. *See Julce*, 2018 WL 1083734, at * 4 (finding no Suspension Clause violation where petitioner had "approximately four-and-a-half years to file a motion [to reopen] raising the claims he has raised here."); *Quereshi v. Admin. Appeals Office of U.S. Citizenship and Immigr. Servs.*, 408 F. App'x

611, 615 (3d Cir. 2010). Kim married his U.S. citizen spouse in 2013. (Pet. ¶ 29.) Kim entered removal proceedings in 2014 and did not seek adjustment of status as an application for relief from removal. (Guarna-Armstrong Decl. ¶¶ 9-10.) Kim's U.S. citizen wife still has not filed an I-130 on his behalf, and Kim has not moved to reopen his removal proceedings to apply for adjustment of status with a waiver for his criminal grounds of inadmissibility. (Pet. ¶¶ 29, 30; Guarna-Armstrong Decl. ¶ 26.) Should an I-130 be filed on his behalf, Kim is free to file a motion to reopen and seek a stay of removal from the immigration court pending adjudication.

Moreover, unlike the petitioners in *Jimenez v. Nielson, et al.*, 334 F. Supp. 3d 370, 387 (D. Mass. 2018), Kim is not eligible for a provisional unlawful presence waiver. (Pet. ¶ 7.) In *Jimenez*, Judge Wolf found that the Suspension Clause guaranteed petitioners review of their claims in the district court because the claims could not be presented to the court of appeals. *Id.* at 384. Petitioners were seeking to prevent ICE from removing them from the United States prior to completing their pursuit of the provisional waiver process. This process allows an alien with a final order of removal to obtain an approved I-601A, Application for Provisional Unlawful Presence Waiver, prior to departing the United States pursuant to a final order of removal.[3] Judge Wolf found that petitioners could not raise their claims through a motion to reopen because if their cases were reopened, they would not be eligible for the provisional waiver. *Id.* at 382. And, their claims were not subject to judicial review before the courts of appeal because they were not challenging

---

[3] The provisional unlawful presence waiver process allows those individuals who are statutorily eligible for an immigrant visa (immediate relatives, family-sponsored or employment-based immigrants as well as Diversity Visa selectees) who only need a waiver of inadmissibility for unlawful presence to apply for that waiver in the United States before they depart for their immigrant visa interview; https://www.uscis.gov/family/family-us-citizens/provisional-unlawful-presence-waivers.

the validity of their removal orders, they were only challenging ICE's decision to enforce their removal orders while they were pursuing the provisional waiver process. *Id.*

Here, Kim is not eligible for a provisional unlawful presence waiver. Even assuming Kim had completed the first two steps in the process to obtain a provisional unlawful presence waiver, obtaining an approved I-130 and a conditionally approved form I-212, Permission to Reapply for Admission to the United States after Deportation or Removal, pursuant to the applicable regulation, 8 C.F.R. § 212.7, he would be eligible for a provisional unlawful presence waiver only if, "[u]pon departure, [he] would be inadmissible only under section 212(a)(9)(B)(i) of the Act at the time of the immigrant visa interview." 8 C.F.R. § 212.7(e)(3)(iii); *see Jimenez*, 334 F. Supp. 3d at 378 (outlining steps necessary for alien with final order of removal to obtain immigrant visa based on marriage with only a brief trip abroad). An alien is inadmissible under section 212(a)(9)(B)(i) of the Act for unlawful presence. 8 U.S.C. § 1182(a)(9)(B)(i). In this case, Kim is also inadmissible for 8 U.S.C. § 1182(a)(2)(A)(i)(I), for crimes involving moral turpitude. To waive his criminal grounds of inadmissibility without reopening his removal proceedings, Kim would have to depart the United States and apply for a 212(h) waiver and unlawful presence waiver from abroad. *See* 8 C.F.R. § 212.7(e)(12), (e)(14); [4] § 212.7(d). Thus, Kim is not eligible for a

---

[4] 8 C.F.R. § 212.7(e)(14) provides:

> Automatic revocation. The approval of a provisional unlawful presence waiver is revoked automatically if:
>
> (i) The Department of State denies the immigrant visa application after completion of the immigrant visa interview based on a finding that the alien is ineligible to receive an immigrant visa for any reason other than inadmissibility under section 212(a)(9)(B)(i)(I) or (II) of the Act. This automatic revocation does not prevent the alien from applying for a waiver of inadmissibility for unlawful presence under section 212(a)(9)(B)(v) of the Act and 8 CFR 212.7(a) or for any other relief from inadmissibility on any other ground for which a waiver is available and for which the alien may be eligible.

provisional unlawful presence waiver that would allow him to obtain an immigrant visa with only a brief trip abroad.[5]

Finally, the Suspension Clause by its very terms only applies to habeas corpus relief. U.S. CONST. ART. 1 § 9. Kim's request that this Court stay his removal is *not* a request for habeas relief. *See Hamama v. Adducci*, 912 F.3d 869, 875-76 (6th Cir. 2018) ("Because the common-law writ could not have granted Petitioners' requested relief [a stay of removal], the Suspension Clause is not triggered here."); *cf. United States v. Jung Ah Lung*, 124 U.S. 621, 622 (1888) (a habeas claim seeks "the discharge from custody of the person").

Therefore, pursuant to 8 U.S.C. § 1252, this Court lacks jurisdiction over the request for a stay of removal, and the application of that provision does not violate the Suspension Clause. *See Julce*, 2018 WL 1083734 at *5.

### B. Kim Has No Due Process or Statutory Right to Release or a Stay of Removal Pending Pursuit of Adjustment of Status.

Kim appears to allege that detaining and removing him without allowing him to apply for adjustment of status through his U.S. citizen spouse, with a waiver under 212(h), violates the INA, its regulations, and the APA. (Pet. ¶¶7, 65-66, 85-87.) Kim fails to set forth any support for this assertion, and he is simply wrong.

There is no right under the INA (or the Constitution) to be released or not removed simply because an individual might have an avenue to adjust status. *See Gomes v. Smith*, 381 F. Supp. 3d 120, 124 (D. Mass. 2019) ("In essence, all three forms of relief that petitioner seeks emanate from

---

[5] Additionally, Judge Wolf made clear in *Jimenez* that, even in the case of an individual eligible for a provisional waiver, "ICE may deport an alien before CIS has the opportunity to adjudicate his or her application for a provisional waiver if it makes an individualized decision to do so based on more than the mere fact that the alien is subject to a final order of removal." *Jimenez*, 334 F. Supp. 3d at 390.

his removal proceedings and thus he has no Due Process right to remain in the United States while his administrative claims are adjudicated"). Congress has set out a comprehensive scheme for relief in the INA, and courts are not free to create new procedures as they see fit. *See, e.g., Jennings v. Rodriguez*, 138 S. Ct. 830, 847-48 (2018). There is nothing about his detention that prevents him from pursuing adjustment of status, and indeed, although Kim has been married to a U.S. citizen since 2013, Kim does not allege that he has even begun this process. (Pet. ¶ 29.) Kim fails to allege any support for his claim that ICE is prohibited by law or under the Constitution from removing him until he completes a speculative process to seek adjustment of status, a process for which, as set forth below, he is ineligible at this time. Moreover, there is nothing that prevents Kim from pursuing his immigration remedies from abroad. In fact, spouses seeking a visa based upon their marriage to a U.S. citizen or lawful permanent resident routinely apply for the visa from outside the country.[6] Just because his path to residency is more complex and time-consuming does not mean that he can stay in the United States unlawfully during that process.[7]

---

[6] If removed, Kim would be inadmissible to the United States under 8 U.S.C. §§ 1182(a)(9)(A) & (B) and 1182(a)(2)(A)(i)(I). Therefore, he would need to file a Form I-212, Application for Permission to Re-apply for Admission into the United States After Deportation or Removal. Approval of the Form I-212 would waive his inadmissibility based upon his removal from the United States and allow him to seek readmission to the United States after his I-130 is approved, based upon his relationship with his spouse. He would also need to file an I-601, Application for Waiver of Grounds of Inadmissibility and seek to waive his grounds of inadmissibility related to his unlawful presence and his commission of crimes involving moral turpitude. Removal therefore adds another layer of complexity to Kim's path to legal status, but it does not prevent him from pursuing his immigration remedies.

[7] As discussed above, Kim is not eligible for a provisional waiver of unlawful presence.

Furthermore, with a final order of removal,[8] Kim is not eligible to apply for adjustment of status and a 212(h) waiver through his U.S. citizen wife while in the United States. (Pet. ¶¶ 65-66); 8 U.S.C. §§ 1255(a), 1182(a)(9)(A)(ii)(I). Therefore, to argue that ICE's detention of Kim, an alien with a final order of removal, is arbitrary and capricious in violation of the APA or in violation of due process is entirely without merit.

### C. Kim's Detention Pending Removal is Lawful As He Will Be Removed In The Reasonably Foreseeable Future.

Kim's detention pending execution of his final order of removal is lawful and constitutional. Kim seemingly asserts that because ICE did not remove him during the removal period that occurred after he obtained a final order of removal in 2014, ICE is therefore unable to detain and remove him thereafter. (Pet. ¶ 92.) However, Kim ignores ICE's statutory authority contained at 8 U.S.C. § 1231(a)(6), which specifically provides that ICE may detain an alien, such as Kim, who has convictions for offenses that render him removable from the United States "beyond the removal period." Kim points to no authority for the proposition that ICE cannot remove an alien, subject to a final order of removal, if it was once unable to remove him during the initial removal period. Such statutory authority exists and is contained within 8 U.S.C. § 1231(a)(6). Detention under § 1231(a)(6) has two purposes – preventing flight and protecting the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Here, Kim's detention to facilitate his removal— where travel documents have been issued and his removal is being scheduled— is

---

[8] Kim would need to first reopen his removal proceedings and then apply to adjust status after obtaining an approved I-130 petition filed by his U.S. citizen spouse, with a waiver of his criminal grounds of inadmissibility, before the immigration court. If his proceedings were reopened, Kim's removal order would no longer be final and he would not be subject to removal. 8 C.F.R. § 1003.23.

11

clearly related to the statutory purpose of preventing flight and does not violate Kim's due process rights.

The Supreme Court in *Zadvydas* recognized six months as a presumptively reasonable period of post-final order detention within which to allow the government to accomplish an alien's removal. 533 U.S. at 701. However, the Court further held:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. *This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.*

*Zadvydas*, 533 U.S. at 701 (emphasis added).

Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). The fact that an individual is detained longer than six months "does not mean he must now be released." *Abiodun v. Mukasey*, 264 F. Appx. 726, 729 (10th Cir. 2008). "Courts have found no significant likelihood of removal in five circumstances: (1) the detainee is stateless and no country will accept him; (2) the detainee's country of origin refuses to issue a travel document; (3) the United States does not have a repatriation agreement with the detainee's native country; (4) political conditions in the detainee's country of origin render removal virtually impossible; and (5) the delay in issuing travel documents warrants an inference that the documents will likely never issue." *Williams v. Sessions*, Case No.

CV 18- 2633(DSD/SER), 2019 WL 234350, at *3 (D. Minn. Jan. 16, 2019). None of the circumstances is present in this case.

Kim has been detained for just under nine months owing to unique events that led to the postponement of his removal in June 2019. (Pet. ¶ 38); (Guarna- Armstrong Decl. ¶¶ 16-17.) But as set forth above, ICE has taken the appropriate required steps to secure his removal, obtained the necessary travel documents twice and has tentatively scheduled his removal for the week of January 5, 2020. (*See generally* Guarna- Armstrong Decl. ¶¶ 14-25.) The Cambodian Embassy has issued the necessary documents, and the assault investigation is no longer an impediment to his removal. (*Id.* ¶¶ 20, 23.) Thus, Kim's removal is likely to occur in the reasonably foreseeable future. (*Id.* ¶ 25.) Kim's detention pending execution of his removal order remains lawful, and his petition should be dismissed. *See, e.g.*, *Kenneh v. Tompkins*, No. 17-10490, 2017 WL 2888943, at *3 (D. Mass. July 6, 2017) (dismissing petition when removal imminent).

### D. Kim Has No Right to Be Released from Detention Based on Alleged Regulatory Violations.

Finally, Kim claims that his detention is unlawful and violates his right to due process because he was detained "without an opportunity to be heard" and because he was not given notice of a custody review and an interview. (Pet. ¶¶ 71, 80-82, 101.) Kim's arguments lack merit.

Kim offers no support for his assertion that ICE's decision to release him on an order of supervision creates a liberty or property right protected by due process. It does not. *See Gutierrez- Soto v. Sessions*, 317 F. Supp. 3d 917, 929 (W.D. Tex. 2018) ("[T]he Court cannot agree that Respondents' grace of allowing them to remain on parole for nearly a decade has created a due process right. It was a discretionary decision for Respondents to grant them parole, and Respondents had the authority to revoke that parole. . . . Further, the Supreme Court has recognized the use of detention during deportation proceedings as constitutionally valid.")

Moreover, even if such a due process right existed, ICE satisfied its requirements. As Kim himself sets forth in his petition, ICE provided him with advance notice of its intention to revoke his Order of Supervision, take him into custody, and effectuate his removal order by sending him a letter in early March of 2019 requiring him to report to his local ICE office. (Pet. ¶ 37); *cf. Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. Nov. 8, 2017); *Ragbir v. Sessions*, No. 18-CV-236 (KBF), 2018 WL 623557, at *2 (S.D.N.Y. Jan. 29, 2018). Under 8 C.F.R. § 241.4(l), at the time ICE revoked his Order of Supervision, Kim was entitled to receive a notice explaining the reasons for the revocation and an informal interview after his return to custody to respond to the reasons for the revocation as set forth in the notification. *See Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *7 (D. Mass. Oct. 1, 2018) (discussing 8 C.F.R. § 241.13(i)(3)). In this case, Kim received both. ICE provided Kim with a Notice of Revocation of Release when it detained him on March 20, 2019. (Guarna-Armstrong Decl. ¶ 13.) Kim received an informal interview the same day. (*Id.*) Due process does not entitle Kim to anything more. *See Doe*, 2018 WL 4696748, at * 7, 9 (finding no due process violation because ICE complied with its regulations and stating "The regulation only mandates that upon revocation of release, the petitioner must be given an initial opportunity to dispute the government's justification for revocation. There is no requirement that ICE give any advance notice of the informal interview either to a petitioner or her counsel.").

Nor is Kim entitled to release based on ICE's alleged failure to comply with other facets of the post-removal order custody regulations. (Pet. ¶ 80.) If an individual is not released from custody following the informal interview, continued detention is governed by 8 C.F.R. § 241.4(l)(3), which provides for ICE to serve notice to the alien that a custody review will occur within three months after release is revoked and the scheduling of an interview. 8 C.F.R. §

14

241.4(l)(3). ICE provided notice to Kim that it would conduct a custody review to determine whether he should remain in detention or be released on an Order of Supervision. (*Id.*) ICE then conducted a custody review approximately 60 days after Kim's return to detention. (*Id.* ¶ 15); 8 C.F.R. § 241.4(l)(3). ICE's custody review that occurred in May of 2019 concluded that release was not appropriate in part because a travel document had been issued. (Guarna-Armstrong Decl. ¶ 15.) Per 8 C.F.R. § 241.4(g)(2), ICE's "determination that receipt of a travel document is likely may by itself warrant continuation of detention pending the removal of the alien from the United States." And ICE conducted two additional custody review approximately five months and eight months after Kim's detention began. (Guarna-Armstrong Decl. ¶¶ 19, 22); 8 C.F.R. § 241.4(l)(3). During the custody review that occurred in August of 2019, ICE again noted that it had obtained a travel document for Kim and therefore continued detention was appropriate. (Guarna-Armstrong Decl. ¶ 19.) In the custody review that occurred in November of 2019, ICE noted that it expected a travel document and therefore continued detention was appropriate. (Guarna-Armstrong Decl. ¶ 22.) Such decisions are fully supported by 8 C.F.R. § 241.4(g)(2).

Kim does not allege that he would have been released from custody had ICE conducted a formal interview in connection with the initial custody review that followed the revocation of his Order of Supervision. *See* 8 C.F.R. § 241.4(l)(3). Therefore, Kim suffered no injury. And where there is no injury, the mere failure to conduct an interview does not require release. *See Doe*, 2018 WL 4696748, at *9 (finding that unless "a prompt interview might have led to her immediate release—for example, a case of mistaken identity. There is [thus] no apparent reason why a violation of the regulation, even assuming it occurred, should result in release."); *see also Ahmad v. Whitaker*, Case No. C18-287-JLR-BAT, 2018 WL 6928540, at *5 (W.D. Wash. Dec. 4, 2018), report and recommendation *adopted sub nom. Ahmad v. Whitaker*, No. C18-287-JLR, 2019 WL

95571 (W.D. Wash. Jan. 3, 2019) (citing *Doe* and finding "there is no apparent reason that ICE's failure to provide an informal interview should result in Mr. Ahmad's release."); *Ming Hui Lu v. Lynch*, Case No. 1:15-CV-1100-GBL-MSN, 2016 WL 375053, at *8 (E.D. Va. Jan. 29, 2016) (in case where ICE failed to conduct custody review at the 180-day mark of detention "granting habeas relief for ICE's failure to promptly conduct a 180-day POCR is an extreme, and thus inappropriate remedy in this case."); *see also U.S. v. Montalvo-Murillo*, 495 U.S. 711, 717 (1990) [9] (finding that failure to provide a timely detention hearing did not bar detention after a tardy hearing and reversing Tenth Circuit's order of release); *Cf. Conservation Law Found. of New England, Inc. v. Clark*, 590 F. Supp. 1467, 1475 (D. Mass. 1984) ("If the court determines that the agency's course of inquiry was insufficient or inadequate, it should remand the matter to the agency for further consideration and not compensate for the agency's dereliction by undertaking its own inquiry into the merits.") (quoting *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980)).

Thus, Kim is not entitled to release from detention.

---

[9] *But see Rombot*, 296 F. Supp. 3d at 389.

# CONCLUSION

For the reasons set forth herein, the Respondent respectfully requests that the Petition be dismissed.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Erin E. Brizius*
Erin E. Brizius, NY No. 4821161
Assistant United States Attorney
United States Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way - Suite 9200
Boston, MA 02210
(617) 748-3398
Dated: December 12, 2019                Erin.E.Brizius2@usdoj.gov


# LOCAL RULE 7.1 CERTIFICATION

I hereby certify that, pursuant to Local Rule 7.1, I conferred with Petitioner's counsel and Petitioner does not assent to the relief requested in this Motion.

*/s/ Erin E. Brizius*
Erin E. Brizius
Dated: December 12, 2019                Assistant United States Attorney


# CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants by First Class Mail.

*/s/ Erin E. Brizius*
Erin E. Brizius
Dated: December 12, 2019                Assistant United States Attorney